UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:25-CR-131-Z-BR |
| | § | |
| DENISE ANN DAVILA, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER DENYING MOTION FOR PRETRIAL DETENTION

Defendant initially appeared before the undersigned on December 5, 2025 in connection with a criminal complaint alleging that she has violated 18 U.S.C. § 1513(b)(2) by "Obstructing Justice by Retaliating Against a Witness, Victim, or Informant." (ECF 5 *and* ECF 1 at 1). Now before the Court is the Government's motion to detain Defendant pending trial under 18 U.S.C. § 3142. (ECF 3). The parties appeared and argued the motion before the undersigned at a detention hearing on December 15, 2025. (*See* ECF 17) (minute entry). Each side proffered evidence, and Defendant called two witnesses to testify—the Defendant's bail bondsman in a separate state court proceeding, and the Defendant's prospective third-party custodian in this proceeding. (ECF 18 at 1) (Exhibit and Witness List).

Having considered the motion, the evidence and arguments of the parties, and the applicable law, the Court finds for the following reasons that the Government's motion should be DENIED. Defendant will be ORDERED released at a hearing on **Monday, December 22, 2025 at 11:15 a.m.**, subject to the conditions established by the forthcoming Order Setting Conditions of Release, an unsigned copy of which is attached to this Order.

# I.    BACKGROUND

This case is related to another in this Court, *United States v. Macias et al.*, No. 2:23-cr-062. The first of two defendants[1] in that case, Angela Macias, was sentenced on December 4, 2025 to one hundred and seventy-five months imprisonment, followed by three years of supervised release, for the offense of Distribution and Possession with Intent to Distribute Methamphetamine. Macias is Defendant's sister, and the alleged victim in this case was a potential witness against Macias. (ECF 1 at 3).

The criminal complaint alleges that on March 21, 2025, the victim was assaulted by Defendant in the parking lot of a gas station and convenience store. (*Id.* at 2). The victim reported the assault three days later, on March 24. (*Id.*). The complaint details that "[d]uring further interview of the victim, the victim explained . . . [that Defendant] called the victim a 'snitch' and accused the victim of being a witness against [Defendant's] sister." (*Id.*).

The altercation in question was captured on video, without audio, by the convenience store's surveillance cameras, and the video was admitted into evidence at the detention hearing as Government Exhibit 1. (*See* ECF 18 at 1). In the video, the victim can be seen walking away from the convenience store and toward the gas pumps when the front half of a red sedan pulls into the frame from the left. The victim continues walking, but keeps her face turned towards the vehicle. The Defendant enters the frame from the same area as the vehicle, pointing a finger at the victim and approaching her.

As the distance between the two closes, the vehicle slowly pulls farther into the frame, and the victim changes course, attempting to back away from the Defendant without turning her back.

---

[1] The other defendant in that case, Kathy Teresa Davila, is also referenced in the arguments of the parties, as further explained below.

Once she is within a few feet of the victim, the Defendant begins to swing her arms at the victim, pulls the victim to the ground, bites her, and then stands up, continuing to strike the prone victim with her hands and feet. As the altercation proceeds near the fenced outer edge of the parking lot, the red sedan slowly pulls between it and the rest of the parking lot. When she moves away from the victim, the Defendant jogs to the passenger side of the red sedan, opens the door, and moves to sit in the vehicle while the victim is standing up. The video then cuts off abruptly.

A still image from a different angle, showing Defendant standing on the passenger side of a red Toyota sedan, was admitted as Government Exhibit 2. (*Id.*). Photographs purporting to show the victim's injuries from the altercation were admitted as Government Exhibits 4–6. (*Id.*). These include an image of fresh bruises on the back of the victim's left shoulder[2] that the Government attributes to Defendant biting the victim (Government Exhibit 4), an image of the same bruises after some weeks had passed (Government Exhibit 6), and an image of fresh bruising and abrasions on the victim's wrist (Government Exhibit 5).

Defendant is currently the subject of an unrelated state court proceeding for theft, *State of Texas v. Davila*, No. 34526A in the 47th District Court of Randall County, Texas. At the detention hearing before the undersigned, the parties discussed the issuance and subsequent surrender of a bail bond in that proceeding. The Court admitted Government Exhibit 3 under seal, comprising several documents related to the issuance and surrender of that bail bond. (*See* ECF 18 at 1). Defendant called Joshua Daniel Wilson, the owner and operator of Bomb City Bail Bonds, to testify that the bond was surrendered only on account of Defendant's arrest and detention for this

---

[2] Initially, the two images of this injury appear to show different shoulders of the victim; the Court perceives that this is because the victim took the first photograph herself by pointing the rear-facing camera of her cellular phone at a mirror behind her, while the second photograph was taken by a person pointing the camera directly at the back of the victim's shoulder.

federal matter, which could otherwise have led to Defendant's forfeiting the bond. (*Id.*). Wilson testified that, if Defendant were ordered released in this proceeding, he would work with Defendant to secure a new bail bond for her state court proceeding.

At the detention hearing, counsel for Defendant proffered that state court assault charges for the altercation at issue here had been rejected by the county, and that the victim in this case is currently herself incarcerated on unrelated charges. Defendant also called Merce Barnes, one of Defendant's sisters and her prospective third-party custodian, to testify that Defendant would be able to stay with her in Pampa, Texas[3] throughout these proceedings and that Defendant's employer is currently holding her job for her. (*Id.*).

Both sides point to the detention history in the *Macias* case to support their positions in this case. Both defendants in that case, Davila[4] and Macias, are Defendant's sisters. Government motions to detain Macias and Davila were both denied in that case, and both defendants were released on conditions.

Davila performed well on release, making all required court appearances and complying with all conditions, and ultimately agreed to plead guilty to Distribution and Possession with Intent to Distribute Methamphetamine. As a drug crime with a maximum sentence including imprisonment for ten years or more, that plea subjected Davila to mandatory detention pending sentencing under 18 U.S.C. 3143(a)(2), unless she could show she was neither a flight risk nor a danger to the community and that exceptional circumstances justified her continued release. *See* 18 U.S.C. 3145. She was ultimately able to show exceptional circumstances, and so was continued

---

[3] Pampa, Gray County, Texas is a smaller community approximately fifty-five miles northeast of Amarillo, Texas, the seat of this Judicial Division.

[4] The Court refers to the defendant in this case as Defendant, and references in this order to "Davila" are to Kathy Teresa Davila.

on conditions of release until sentencing. *United States v. Davila*, 2024 WL 1337869 (N.D. Tex. Mar. 28, 2024). She was eventually sentenced to a term of five years' probation in lieu of imprisonment.

Macias, like her sister, initially complied with the Court's conditions of release and agreed to plead guilty to Distribution and Possession with Intent to Distribute Methamphetamine. At her rearraignment hearing on January 2, 2024, however, Davila did not appear as required, and a bench warrant was issued for her arrest. She successfully evaded capture for almost a year and a half, until she was found in May of 2025 in her son's home while he was being investigated for a separate criminal matter.[5] She ultimately moved forward with her original plea agreement, was sentenced as noted above, and is now incarcerated.

Defendant argues that her family, especially her sister Merce Barnes as third-party custodian, will support her in complying with conditions of release the same way her sister Davila did. The Government, by contrast, argues that Defendant's family was complicit in Macias' violation of conditions and subsequent evasion of arrest. At Defendant's detention hearing, the Government proffered that Defendant lied to the United States Marshal Service regarding Macias' whereabouts while she was at large, and that jail calls have recorded Defendant and her family conversing about lying to the Court during Macias' sentencing and working to agree on a fictitious explanation for the altercation at issue in this matter.

---

[5] *United States v. Macias*, 2:25-cr-064-Z-BR.

## II.    APPLICABLE LAW

Once a person has been arrested for a federal crime and brought before a judicial officer, federal law requires that officer[6] to determine whether the person should be "be released or detained, pending judicial proceedings[.]" 18 U.S.C. § 3141.

In keeping with the presumption of innocence until guilt is proven, the standard is to release the person on their personal recognizance, or upon execution of an unsecured appearance bond in an amount set by the Court. *Id.* at § 3142(b); *see also Chavez v. Cockrell*, 310 F.3d 805, 808 (5th Cir. 2002) ("The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice.") (quoting *Estelle v. Williams*, 425 U.S. 501, 503 (1976)). The sole conditions attaching to such release are those that apply in all cases; the defendant must cooperate in providing a DNA sample, if the law authorizes one to be taken, and must not violate any laws while on release. *Id.* at § 3142(b).

The law only permits a judicial officer to deviate from that standard if "such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." *Id.* The first of these elements, the reasonable assurance of the person as required, is commonly evaluated in terms of a defendant's "flight risk." The second, the danger posed by a defendant's release to the safety of other persons and the community, is often paraphrased as a defendant's "dangerousness."

If a defendant's flight risk and dangerousness do not permit release on personal recognizance or an unsecured bond, the law requires they be released "subject to the least restrictive further condition, or combination of conditions, that" will reasonably account for the defendant's flight risk and dangerousness. *Id.* at § 3142(c)(1)(B). The statute then lists fourteen

---

[6] The term "judicial officer" is used here because federal law permits a wide variety of federal, state, and local officials to perform this function. 18 U.S.C. § 3041.

different examples of such conditions, the last of which is "any other condition that is reasonably necessary to assure the appearance of the person as required and to assure the safety of any other person and the community." *Id.* at 3142(c)(1)(B)(i)–(xiv). Some of these conditions are mandatory in cases involving minor victims or failure to register as a sex offender, and no financial conditions can be imposed in any case that would result in pretrial detention of those too poor to satisfy it; otherwise, conditions of release are left to the discretion of the judicial officer, who may amend them at any time. *Id.* at 3142(c)(1–3).

None of the options described above—release on personal recognizance, on an unsecured bond, or on conditions of release—require a prior hearing. The judicial officer must hold a hearing, however, before ordering any person detained before trial. *Id.* at 3142(e)(1). A government attorney can request a detention hearing in limited categories of cases. *Id.* at 3142(f)(1)–(2). If the Government does not move for a detention hearing, the judicial officer can only hold one if there is "a serious risk that [the defendant] will flee[,] or a serious risk that [the defendant] will [or will] attempt to obstruct justice, or threaten, injure, or intimidate . . . a prospective witness or juror." *Id.* at 3142(f)(2)(A)–(B) (internal numbering omitted).

The law sets various standards for the detention hearing. It must occur within a specified time, and the defendant has the right to be represented by counsel. *Id.* at 3142(f). Though the rules for the admissibility of evidence do not apply to the hearing, and the law makes no specific provisions for the Government to offer evidence, it does reserve to the defendant the rights to testify, present witnesses, cross-examine witnesses who appear, "and to present information by proffer or otherwise." *Id.*

A judicial officer must order a defendant detained pending trial only if, "after a hearing . . ., the judicial officer finds that no condition or combination of conditions will reasonably assure

the appearance of the person as required and the safety of any other person and the community." *Id.* at 3142(e)(1). The facts used to support a finding on dangerousness must "be supported by clear and convincing evidence." *Id.* at 3142(f). The statute is silent as to the evidentiary standard for flight risk, and courts in this Circuit evaluate that element using a preponderance of the evidence standard. *See United States v. Fortna*, 769 F.2d 243, 250 (5th Cir. 1985)

In some cases, the law imposes a presumption that the defendant should be detained, and requires the defendant to rebut that presumption. *Id.* at 3142(e)(2)–(3). Even in those cases, however, there is no "burden of persuasion" on the defendant, who is required merely to produce evidence sufficient to rebut the presumption. *United States v. Flores*, 53 F.4th 313, 315 (5th Cir. 2022) (quoting *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989)).

When deciding whether to release or detain a defendant, and whether to impose conditions on that release, the law requires judicial officers to consider certain factors. These include:

> the available information concerning the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves a minor victim or a controlled substance, firearm, explosive, or destructive device; the weight of the evidence against the person; the history of and characteristics of the person, . . . and the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g)(1)–(4) (internal numbering and punctuation omitted). The "history and characteristics of the" defendant are specified to include a wide range of details, including[7] character, physical and mental state, substance abuse history, employment, community ties, past conduct, criminal history, and any pending criminal proceedings under federal, state, or local law. *Id.* at 3142(g)(3)(A)–(B).

To summarize, in keeping with the presumption of innocence, the law imposes a strong bias in favor of releasing defendants while their case proceeds. A defendant may be ordered

---

[7] The statute does not limit the Court to considering the defendant's history and characteristics in only the listed ways.

detained pending trial only if, after a hearing at which they were given legal counsel and were permitted to produce their own evidence, the preponderance of evidence precludes a reasonable assurance that they would appear in court when ordered to do so, and clear and convincing evidence precludes a reasonable assurance that they would not pose a danger to other people or the community.

### III.    ANALYSIS

In this case, the Government based its motion for a pretrial detention hearing on the risk that the Defendant will flee or will obstruct justice, threaten, injure, or intimidate a prospective witness or juror, or will attempt to do so.[8] (ECF 3 at 1); *see* 18 U.S.C. § 3142(f)(2)(A)–(B). This is not a rebuttable presumption case. *See* 18 U.S.C. 3142(e)(2)–(3). The Government argues that detention is justified by both flight risk and dangerousness. (ECF 3 at 2). For the following reasons, the Court disagrees.

The preponderance of the evidence in this case does not indicate that Defendant will fail to appear as required. The Government's evidence, submitted by proffer, shows only that some members of Defendant's family have engaged in unscrupulous behavior. There are vague allegations that Defendant herself has lied to government officials, but the Government did not present sufficient details or evidence for these allegations to overcome Defendant's evidence relevant to flight risk, including her family and community ties and employment status.

There is also not clear and convincing evidence in this case to show that Defendant will pose a danger to the safety of other persons or the community if released. The Government's argument on this prong focuses on the nature and circumstances of the offense charged. The

---

[8] The Court notes in passing that the latter basis is probably an inappropriate duplication of the offense charged in this case; there has been no allegation that Defendant intends to obstruct justice or threaten, injure, or intimidate a prospective witness or juror in this or any other still-pending proceeding.

circumstances of this case, however, amount to an isolated instance of violence targeting a now-inaccessible victim for a reason that no longer applies. The victim is now incarcerated, and so cannot be threatened or harmed by Defendant while on release, and the criminal matter in which she was allegedly expected to testify[9] is now resolved.

Defendant's criminal history, though admittedly lengthy, does not include the necessary evidence that the Defendant will pose a flight risk or a danger to the community. Defendant has only ever been charged for a violent crime one other time, for Injury to a Child with Intentional Bodily Injury in 1998, when she was eighteen years old; the ultimate disposition of that charge is not known to the Court. The twenty-seven years of intervening criminal history comprises only minor drug or property charges, many of which were never prosecuted.

This case is unusual in that the Defendant's strong and local family ties, which are a factor to be considered under 18 U.S.C. § 3142(g)(3)(A), have been invoked by the Government as weighing in favor of detention. Ordinarily, such ties would weigh against flight risk and in favor of release, because a defendant with strong local family ties is less likely to flee the locality. If the Court is to consider that Defendant's sisters might provide her an example in this case, though, there is no reason to expect she will emulate Macias, who violated conditions and is now serving a lengthy prison sentence, rather than emulating Davila, who complied with conditions and is now on probation.

Moreover, Defendant's sister, Merce Barnes, has volunteered to serve as a third-party custodian for Defendant, and she lives in the same community where Defendant has a job waiting. She appears to be a fully qualified candidate for third-party custodian, she has no criminal record,

---

[9] The government has not produced any evidence that the victim was an informant or had agreed to testify in any trial, and such evidence is not required at this stage because it goes to the question of Defendant's guilt of the offense charged, not to any factor in pretrial release.

and Defendant's attorney relays that she was involved in their sister Kathy Davila's success on pretrial release.

The Court finds a helpful comparison to a case in another judicial circuit, *United States v. Harris*, No. 2:17-cr-167, 2018 WL 318465 (E.D. Wis. Jan. 5, 2018). The defendant in that case, Harris, had spent the evening with friends at a bar, and was leaving with two of them while the third, a man named Lazcon, remained behind. *Id.* at *2. Very shortly after they parted ways, Lazcon placed a phone call to the others, telling them to, "Come back! That guy who did my bro is here[.]" *Id.* Harris and the others returned and together the group confronted a person whom Lazcon announced to bar patrons was "the snitch who told on [his] brother[.]" *Id.* The targeted individual fled the bar, successfully evading the group's attempts to strike him. *Id.* As he drove away, Harris fired a shot that allegedly struck the rear driver's side door of the target's vehicle. *Id.* at *3. Harris was charged with Conspiracy to Retaliate Against an Informant, Obstruction of Justice by Attempting to Kill an Informant, and Discharge of a Firearm During a Crime of Violence. *Id.* at *1.

The magistrate judge in that case initially ordered Harris to be detained pending trial. *Id.* The district judge overturned that decision. *Id.* at *6. In doing so, the court noted that "[t]he parties expend[ed] most of their energy vigorously disputing what actually occurred on" the evening in question. *Id.* at *4. Those events were "relevant to whether the statutory presumption of detention arises," and to "the nature of the offense, which is undoubtedly serious, and the strength of the government's case[.]" *Id.* This was inadequate, however, to provide clear and convincing evidence that Harris would be dangerous while on release. *Id.*

As the district judge in *Harris* aptly stated, "What is critically lacking in the government's proffer . . . is some argument translating the offense conduct into future dangerousness." *Id.* at *4. Harris, like Defendant in this case, was gainfully employed, had no history of violence, and was

11

enmeshed in the community by strong family ties. *Id.* at *4–5. Though the circumstances surrounding his arrest were "reckless" and involved "gravely concerning" decisions, they did not indicate that Harris would be a danger to the community if released during proceedings. *Id.* at *5. The Court finds the same to be true of Defendant in this case.

As a final matter, the Court notes that an arrest warrant has been issued for Defendant in connection with the surrender of her bail bond in the unrelated state court proceeding referenced above, *State of Texas v. Davila*, No. 34526A in the 47th District Court of Randall County, Texas. Defendant's bond was surrendered only due to this federal proceeding, and the Court has evidence that a renewed bond will be available in state proceedings if Defendant is ordered released. The Court finds that the state arrest warrant will not interfere with Defendant's appearance as necessary for this matter, particularly if the Court sets as condition of release that Defendant must satisfy all requirements necessary to obtain release on bond in her state proceedings.

In addition to that condition, the Court finds that the following combination of conditions is the least restrictive that will reasonably assure Defendant's appearance as required and the safety of other persons and the community while Defendant is on release. To address the Government's concern regarding Defendant's flight risk, the Court will impose a location restriction program on the Defendant with a curfew and location monitoring technology as directed by the pretrial services office or supervising officer. If pretrial services determines it is appropriate to reasonably assure the safety of other persons and the community, Defendant may be directed to participate in a program of counseling.[10] Finally, the Court intends to impose the other conditions indicated in the unsigned Order Setting Conditions of Release that is attached to this Order. At the hearing to set

---

[10] The Court finds that this condition adequately addresses the Government's concerns arising out of the altercation at issue in this case; Defendant's actions on that occasion indicate that she may benefit from anger management counseling.

12

conditions of release, the Court will permit either party to request additions or modifications to the terms indicated here.

## IV.    CONCLUSION

Having reviewed the parties' arguments and evidence, and the applicable law, it has not been shown by the preponderance of the evidence that no combination of conditions could reasonably assure the appearance of Defendant as required, nor by clear and convincing evidence that no combination of conditions could reasonably assure and the safety of other persons and the community if Defendant is released. Accordingly, the Government's motion to detain Defendant pending trial is DENIED. The Defendant will be ORDERED released at a hearing on **Monday, December 22, 2025 at 11:15 a.m.**, subject to the conditions established by the forthcoming Order Setting Conditions of Release. An unsigned version of that forthcoming Order has been attached to this Order to provide notice to the parties.

IT IS SO ORDERED.

ENTERED on December 19, 2025.

LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE